# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# LAFAYETTE DIVISION

| | |
|---|---|
| **CINDY SAMBERG** | **CIVIL ACTION NO. 16-1754** |
| **VERSUS** | **UNASSIGNED DISTRICT JUDGE** |
| **PROGRESSIVE PALOVERDE INSURANCE CO.** | **MAGISTRATE JUDGE HANNA** |

## RULING

Before the Court is a Motion for Partial Summary Judgment filed by Defendant Progressive Paloverde Insurance Company ("Progressive"), whereby Progressive seeks a partial judgment dismissing Plaintiff's claim for "bad faith" statutory penalties and attorney's fees, arguing Plaintiff is not entitled to penalties and attorney's fees because Progressive made an unconditional tender of underinsured motorist ("UM") benefits to Plaintiff within the statutory deadline. [Doc. No. 9; <u>see also</u> Doc. No. 9-3 at 1-2, 11]. Plaintiff Cindy Samberg opposes the motion, arguing Progressive's tender was untimely under the statute, and even if Progressive's tender was timely, it was "abusively low" and therefore Progressive remains liable for bad faith penalties. Doc. No. 12 at 2, 6].

Progressive has submitted a Motion for Leave to File a Reply to Plaintiff's Opposition to Progressive's Motion for Partial Summary Judgment ("Motion for Leave to File Reply"). [Doc. No. 14]. The Motion for Leave to File Reply is hereby **GRANTED**.

Additionally, for the reasons that follow, Progressive's Motion for Partial Summary Judgment [Doc. No. 9] is **GRANTED**.

## FACTUAL AND PROCEDURAL BACKGROUND

Samberg brings this suit against Progressive to recover underinsured motorist benefits, as

well as statutory penalties and attorney's fees pursuant to LA. REV. STAT. 22:1892(A)(1) for Progressive's alleged untimely tender of uninsured motorist benefits.[1]  Although not specifically alleged in her Complaint, in her opposition memorandum, Samberg raises a new argument - namely, that even if Progressive's tender was timely, it was "abusively low," and, therefore, she is still entitled to bad faith penalties. [Doc. No. 12 at 6].  Progressive seeks dismissal of Samberg's claim for bad faith penalties, arguing its tender was both timely and reasonable. [Doc. No. 9-3].

According to Samberg, on or about December 10, 2014, while riding as a guest passenger in a vehicle owned by her employer, she was struck and injured when another driver failed to yield at a stop sign. [Doc. No. 1-1 at ¶¶ 2-3; Doc. No. 12 at 1].  Following the accident, Samberg settled with Allstate, the tortfeasor's automobile insurer, for $15,000.00, which Samberg asserts was the policy limit. [Doc. No. 1-1 at ¶ 6].  At the time of the accident, Progressive provided Samberg's employer with an underinsured/uninsured motorist ("UM") insurance policy.  Id. at ¶ 7; see also [Doc. No. 9-5 at 1]. The parties agree Samberg was a covered insured guest passenger eligible for UM benefits pursuant to Progressive's policy. [Doc. 9-3 at 3].

On April 15, 2015, Samberg's attorney advised Progressive that his client intended to file a claim for UM benefits. [Doc. No. 13 at ¶ 3; Doc. No. 11 at ¶ 2]. Samberg's attorney did not provide a proof of claim or issue a demand at that time, but merely put Progressive on notice that Samberg would file a UM claim at some point in the future. [Doc. No. 11 at ¶ 2].  Progressive opened a UM claim later that day. Id. On July 7, 2015, Progressive spoke with Samberg's counsel

---

[1]According to the Complaint, Samberg additionally contends she is entitled to penalties pursuant to LA. REV. STAT. 22:1892(A)(3) for Progressive's failure to "initiate loss adjustment . . . of a claim for reasonable medical expenses within fourteen days after notification of loss by the claimant." [Doc. No. 1-1 at ¶ 15 (citing LA. REV. STAT. 22:1892(A)(3))]. Progressive does not address the foregoing claim in its motion, and, therefore, this Ruling has no effect on that claim.

regarding Samberg's claim. Id. at ¶ 4. Samberg's counsel informed Progressive that Samberg had filed a claim with her workers' compensation carrier, and her workers' compensation carrier was handling her medical treatment. Id. On January 19, 2016, Samberg's attorney called Progressive and advised his client was still treating, and he had not yet requested Samberg's medical records. Id. at ¶ 5. Counsel additionally advised that he had settled with the tortfeasor's liability insurer for the policy limits of $15,000, and that he had requested the tortfeasor execute an affidavit of no other insurance. Id.; see also [Doc. No. 13 at ¶ 4].

On July 6, 2016, Progressive reviewed Samberg's first formal demand for UM benefits, which was dated June 21, 2016, and included a copy of Samberg's medical bills and records supporting her claim. [Doc. No. 13 at ¶ 5; Doc. No. 11 at ¶ 6]. According to Progressive, Samberg's attorney had advised in a previous phone call that the formal UM demand package would include an affidavit of no other insurance from the tortfeasor, but the affidavit was not included in the package. [Doc. No. 11 at ¶ 6]. Progressive states it contacted Samberg's counsel on July 13, 2016, regarding the missing affidavit. Id. According to Progressive, counsel "admitted that he was mistaken about including [the affidavit] in his demand package–he explained that he wrongly believed he had such an affidavit in his file when in fact he did not," and counsel stated he would work to obtain an affidavit from the tortfeasor. Id. While Samberg does not dispute the foregoing recitation of the July 13, 2016 conversation with Progressive, she nevertheless contends her July 6, 2016 formal demand for UM benefits "provided satisfactory written proof of loss," thereby triggering Progressive's duty to pay her claim, despite the fact her demand did not include an affidavit of no other insurance. [Doc. No. 13 at ¶ 5].

On July 28, 2016, Samberg's counsel emailed a copy of the tortfeasor's executed affidavit

of no other insurance. [Doc. No. 11 at ¶ 7]. Eighteen days later, on August 16, 2016, Progressive made Samberg an unconditional tender of $78,378.00. Id.; see also [Doc. No. 13 at ¶ 7]. As noted, Samberg contends she provided Progressive with satisfactory proof of loss on or before July 6, 2016, and because Progressive's tender was made more than thirty days after July 6, 2016, Progressive is liable to her for penalties and attorney's fees pursuant to LA. REV. STAT. 22:1892, which requires insurers to pay claims within thirty days of receipt of satisfactory proof of loss. [Doc. No. 1-1 at ¶¶ 12-15; Doc. No. 12 at 4, 7]. According to Progressive, Samberg did not provide it with satisfactory proof of loss until July 28, 2016, when she submitted the tortfeasor's affidavit of no other insurance. [Doc. No. 11 at ¶ 7]. Because Progressive made an unconditional tender to Samberg on August 16, 2016 (nineteen days after Progressive contends it received satisfactory proof of loss), Progressive argues Samberg's claim for "bad faith" penalties must be dismissed. [Doc. No. 9-3 at 2, 11].

## STANDARD OF REVIEW

"A party may move for summary judgment, identifying each claim or defense–or the part of each claim or defense–on which summary judgment is sought." FED. R. CIV. P. 56(a). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Id. "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party." Quality Infusion Care, Inc. v. Health Care Service Corp., 628 F.3d 725, 728 (5th Cir. 2010). As summarized by the Fifth Circuit:

When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of an issue of material fact with respect to those issues on which the movant bears the burden of proof at trial. However, where the nonmovant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by

4

> competent summary judgment proof that there is an issue of material fact warranting
> trial.

Lindsey v. Sears Roebuck and Co., 16 F.3d 616, 618 (5th Cir.1994) (internal citations omitted). To satisfy this burden, the non-movant is "required to identify specific evidence in the record, and to articulate the 'precise manner' in which that evidence support[s] [its] claim." Forsyth v. Barr, 19 F.3d 1527, 1537 (5th Cir. 1994) (citing Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir. 1992)). "This burden is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." Little v. Liquid Air Corp., 37 F.3d 1060, 1075 (5th Cir. 1994) (internal citations and quotation marks omitted).

When reviewing evidence in connection with a motion for summary judgment, "the court must disregard all evidence favorable to the moving party that the jury is not required to believe, and should give credence to the evidence favoring the nonmoving party as well as that evidence supporting the moving party that is uncontradicted and unimpeached." Roberts v. Cardinal Servs., 266 F.3d 368, 373 (5th Cir.2001); see also Feist v. Louisiana, Dept. of Justice, Office of the Atty. Gen., 730 F.3d 450, 452 (5th Cir. 2013) (court must view all facts and evidence in the light most favorable to the non-moving party). "Credibility determinations are not part of the summary judgment analysis." Quorum Health Resources, L.L.C. v. Maverick County Hosp. Dist., 308 F.3d 451, 458 (5th Cir. 2002). Rule 56 "mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof." Patrick v. Ridge, 394 F.3d 311, 315 (5th Cir. 2004)(alterations in original)(quoting Celotex v. Catrett, 477 U.S. 317, 322 (1986)).

## APPLICABLE LAW

Louisiana Revised Statute 22:1892 provides in pertinent part:

A. (1) All insurers issuing any type of contract . . . shall pay the amount of any claim due any insured within thirty days after receipt of satisfactory proofs of loss from the insured or any party in interest. . . .

. . . .

B. (1) Failure to make such payment within thirty days after receipt of such satisfactory written proofs and demand therefor . . . when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty, in addition to the amount of the loss, of fifty percent damages on the amount found to be due from the insurer to the insured, or one thousand dollars, whichever is greater, payable to the insured, or to any of said employees, or in the event a partial payment or tender has been made, fifty percent of the difference between the amount paid or tendered and the amount found to be due as well as reasonable attorney fees and costs.

Because Section 1892 is penal in nature, it must be strictly construed. Reed v. State Farm Mut. Auto. Ins. Co., 03-0107 (La. 10/21/03), 857 So.2d 1012, 1020. "The sanctions of penalties and attorney fees are not assessed unless a plaintiff's proof is clear that the insurer was in fact arbitrary, capricious, or without probable cause in refusing to pay."[2] Id. at 1021. Whether or not a refusal to pay is arbitrary, capricious, or without probable cause depends on the facts known to the insurer at the time of its action. Id. "Penalties should be imposed only when the facts 'negate probable cause for nonpayment.'" Louisiana Bag Co., Inc. v. Audubon Indent. Co., 2008-0453 (La. 2008), 999 So.2d 1104, 1114 (quoting Guillory v. Travelers Ins. Co., 54042 (La. 1974), 294 So.2d 215, 217); see also Levy Gardens Partners 2007, L.P. v. Commonwealth Land Title Ins. Co., 706 F.3d 622, 635 (5th

---

[2]The Louisiana Supreme Court holds the phrase "arbitrary, capricious, or without probable cause" is synonymous with "vexatious." Guillory v. Lee, 2009-0075 (La. 6/26/09), 16 So.3d. 1104, 1127 (citing Reed, 857 So.2d at 1021). A "vexatious refusal to pay" means "unjustified, without reasonable or probable cause or excuse." Id. "Both phrases describe an insurer whose willful refusal of a claim is not based on a good-faith defense." Id.

Cir.2013).

A plaintiff who seeks penalties under LA. REV. STAT. 22:1892 must prove the insurer received "satisfactory proof of loss." LA. REV. STAT. 22:1892(A)(1).

> A "satisfactory proof of loss" within the meaning of LA. REV. STAT. 22:658[3] is that which is sufficient to fully apprise the insurer of the insured's claim. To establish a "satisfactory proof of loss" of an uninsured/underinsured motorist's claim, the insured must establish that the insurer received sufficient facts which fully apprise the insurer that (1) the owner or operator of the other vehicle involved in the accident was uninsured or underinsured; (2) that he was at fault; (3) that such fault gave rise to damages; and (4) establish the extent of those damages.

McDill v. Utica Mut. Ins. Co., 85-0610 (La. 1985), 475 So.2d 1085, 1089 (citations omitted); see also Boudreaux v. Optimum Ins. Co., 854 F.2d 88, 93 (5th Cir. 1988). For purposes of whether Progressive's tender was timely, only the first element set forth in McDill is in dispute. Thus, the issue before the Court is whether Progressive has "point[ed] to an absence of evidence" supporting Samberg's claim that Progressive's tender was untimely; if Progressive successfully meets its burden, then the issue becomes whether Samberg has "demonstat[ed] by competent summary judgment proof that there is an issue of material fact warranting trial." Lindsey, 16 F.3d at 618.

For purposes of underinsured insurance coverage, an underinsured motor vehicle is one whose "automobile liability insurance coverage on such vehicle is less than the amount of damages suffered by an insured [of the underinsured motorist insurer] and/or the passengers in the insured's vehicle at the time of an accident. . . ." LA. REV. STAT. 22:1295(2)(b); see also Gillmer v. Parish Sterling Stuckey, 2009-0901 (La. App. 1 cir. 12/23/09), 30 So.3d 782, 785. The burden of proving the underinsured status of the offending motorist rests with the plaintiff. LA. REV. STAT.

---

[3]Louisiana Revised Statute 22:658 was redesignated as section 22:1892 by Acts 2008, No. 415, § 1, effective Jan. 1, 2009.

22:1295(6)(d); see also Swift v. State Farm Mut. Auto Ins. Co., 796 F.2d 120, 122 (5th Cir. 1986);

Campbell v. American Home Assur. Co., 258 So.2d 81, 84 (La. 1972). Louisiana Revised Statute

22:1295(6) provides three methods for establishing *prima facie* proof of the underinsured status of

the owner and driver of the offending vehicle:

> (a) The introduction of sworn notarized affidavits from the owner and the operator of the alleged uninsured vehicle attesting to their current addresses and declaring that they did not have automobile liability insurance in effect covering the vehicle in question on the date of the accident in question. When the owner and the operator of the vehicle in question are the same person, this fact shall be attested to in a single affidavit.

> (b) A sworn notarized affidavit by an official of the Department of Public Safety and Corrections to the effect that inquiry has been made pursuant to R.S. 32:871 by depositing the inquiry with the United States mail, postage prepaid, to the address of the owner and operator as shown on the accident report, and that neither the owner nor the operator has responded within thirty days of the inquiry, or that the owner or operator, or both, have responded negatively as to the required security, or a sworn notarized affidavit by an official of the Department of Public Safety and Corrections that said department has not or cannot make an inquiry regarding insurance. This affidavit shall be served by certified mail upon all parties fifteen days prior to introduction into evidence.

> © Any admissible evidence showing that the owner and operator of the alleged uninsured vehicle was a nonresident or not a citizen of Louisiana on the date of the accident in question, or that the residency and citizenship of the owner or operator of the alleged uninsured vehicle is unknown, together with a sworn notarized affidavit by an official of the Department of Public Safety and Corrections to the effect that on the date of the accident in question, neither the owner nor the operator had in effect a policy of automobile liability insurance.

LA. REV. STAT. 22:§ 1295(6). The effect of utilizing the *prima facie* evidence set forth in the statute

"is to shift the burden of proof from the party or parties alleging the uninsured status of the vehicle

in question to their uninsured motorist insurer." Id. at § (6)(d). Failure to utilize the methods set forth

in the statute results in the burden of proof remaining with the plaintiff to prove such facts by any

other admissible evidence. Campbell, 258 So.2d at 84; Luquette v. Allstate Ins. (Indem.) Co., 50,177

(La. App. 2 Cir. 8/12/15), 174 So.3d 736, 744, n.4, 745-46 (citing <u>Sherer v. Chiasson</u>, 84-458 (La. App. 3 Cir. 1985), 469 So.2d 510, 514-15; <u>Loupe v. Tillman</u>, 367 So.2d 1289, 1290 (La. App. 4 Cir. 1979)).

**ARGUMENT**

I.     **Whether Progressive tendered payment within thirty days of receipt of satisfactory proof of loss**

Progressive argues dismissal with prejudice of Samberg's "bad-faith claim" is warranted because Progressive's unconditional tender of $78,378.00 was timely under the statute. [Doc. No. 9-3 at 2, 11]. According to Progressive, it did not receive satisfactory proof of loss from Samberg until July 28, 2016, when Samberg's counsel emailed a copy of the tortfeasor's affidavit of no other insurance. <u>Id.</u> at 5. Progressive contends the affidavit constituted "the final element of Samberg's *prima facie* showing that she was owed UM benefits." <u>Id.</u> at 1. Because Progressive made Samberg an unconditional tender of $78,378.00 on August 16, 2016 - <u>i.e.</u>, nineteen days after receipt of the affidavit - Progressive contends it complied with its statutory duties, and, therefore, Samberg's bad faith claim must be dismissed. <u>Id.</u> at 5.

Samberg's opposition brief is not abundantly clear as to when she contends she provided Progressive with satisfactory proof of loss. July 6, 2016 appears to be the date Samberg identifies as having submitted satisfactory proof of loss to Progressive, and July 6, 2016, is the date she cites in the "Conclusion" section of her brief. <u>See</u> [Doc. No. 12 at 4 ("[I]n viewing the facts most favorable to the plaintiff, Progressive had thirty days from July 6, 2016 – when plaintiff alleges she met the basic requirements of sufficient proof of loss – to tender payment to the plaintiff."); at 5 ("[T]he plaintiff, on July 6, 2016, proffered multiple documents to the defendant establishing the

underinsured nature of the tortfeasor."); and at 7 ("Ms. Samberg offered sufficient proof of loss to Progressive on July 6, 2017.")]. However, at other places in her brief she appears to assert she provided Progressive with satisfactory proof of loss on June 21, 2016, and/or June 22, 2016. Id. at 2.

Analyzing Samberg's arguments chronologically, Samberg asserts, "Progressive acknowledges that on January 19, 2016, they were given notice that the underlying tortfeasor was underinsured . . . ." [Doc. No. 12 at 4; see also id. at 5 ("Progressive acknowledges actual notice of the underinsured nature of the tortfeasor from the plaintiff on January 19, 2016.")]. However, Progressive denies this allegation to the extent it implies it was provided with anything other than verbal notice by Plaintiff's counsel. [Doc. No.   14-2 at 5, 6-7]. Moreover, Samberg points to no evidence in the record supporting this statement. Indeed, the only evidence the Court has independently located in the record corresponding to the January 19, 2016 date is an affidavit (submitted by Progressive) of Progressive's Claims Specialist Lead, Belinda Merritt, who was assigned to handle Samberg's claim. See [Doc. No.   11 at ¶¶ D-F]. According to the affidavit:

> Later, on January 19, 2016, Samberg's attorney called Progressive and advised that his client was still treating. Nevertheless, he explained that he had "not ordered" her medical records and that he intended to "sit on" the claim and monitor it. Counsel did advise that he had settled the underlying liability claim with the tortfeasor's insurer for policy limits ($15,000) and that he had requested that the tortfeasor (Mallory) execute an affidavit of no other insurance.

Id. at ¶ F(5). To the extent Samberg relies upon the affidavit submitted by Progressive's Claims Specialist Lead to demonstrate the existence of an issue of material fact warranting trial - namely, whether Progressive received sufficient facts fully apprising it that the tortfeasor was underinsured on January 19, 2016 - the Court finds Samberg has failed to demonstrate by competent summary

judgment proof that there is an issue of material fact warranting trial. See McDill, 475 So.2d at 1089; Lindsey, 16 F.3d at 618. The affidavit clearly contains hearsay, it is not based upon the affiant's personal knowledge, and, therefore, it is insufficient to defeat summary judgment. SEE FED. R. CIV. P. 56(c)(4) (affidavits must be made on personal knowledge); Bellard v. Gautreaux, 675 F.3d 454, 462 (5th Cir. 2012) (hearsay is not proper evidence for summary judgment); see also Campbell, 258 So.2d at 84 (Failure to utilize the methods set forth in LA. REV. STAT. 22:1295(6) to show UM status results in the burden of proof remaining with the plaintiff to prove that fact by other admissible evidence).

Samberg contends on June 21, 2016, she "provided satisfactory written proof of loss to defendant by producing proof of the underlying liability limits and medical records and medical bills incurred in the sum of $61,843.00." [Doc. No. 12 at 2]. In support of this statement, Samberg refers the Court to "Defendant's Exhibit 3 p. 2-3." Id. However, the cited document is merely a demand letter from Samberg's counsel wherein he states the tortfeasor's liability insurer "has tendered their policy limits of $15,000. . . ." [Doc. No. 9-6 at 1]. Again, the Court finds this evidence is insufficient to defeat summary judgment. Like Progressive's affidavit, the demand letter from Samberg's counsel clearly constitutes hearsay and is not competent summary judgment evidence. Fed. R. Evid. 802 (hearsay is generally inadmissable); Bellard v. Gautreaux, 675 F.3d 454, 462 (5th Cir. 2012) (hearsay is not proper evidence for summary judgment); Campbell, 258 So.2d at 84.

According to Samberg, "On June 22, 2016, the defendant received a copy of release of all claims against All State [sic], written policy liability limitations of the tortfeasor, and copies of issued checks written as final settlement for Ms. Samberg." [Doc. No. 12 at 2]. Samberg cites the Court to "Plaintiffs [sic] Demand p. 7-14" in support; however, there is no such document in the

11

Record. <u>See</u> [Doc. No. 12 at 2]. Both Samberg's demand letter and her Complaint are merely four pages in length (and thus, there are no pages seven through fourteen for this Court to review), and neither contain competent summary judgment evidence showing Samberg provided Progressive with documents establishing the uninsured nature of the tortfeasor. <u>See</u> [Doc. No. 1-1 at 3-7; Doc. No. 9-6].

Finally, Samberg identifies July 6, 2016, as the date upon which she provided Progressive with sufficient facts to fully apprise it that the tortfeasor was underinsured. In support, Samberg asserts as follows: "Progressive acknowledges that on January 19, 2016, they were given notice that the underlying tortfeasor was underinsured followed by a formal written demand for uninsured benefits supplemental to the claim received by the defense on July 6, 2016" [Doc. No. 12 at 4]; "on July 6, 2016, [Samberg] proffered multiple documents to the defendant establishing the underinsured nature of the tortfeasor," including "a written offer from the tortfeasor's insurer, Allstate, detailing the underinsured nature of the defendant, a copy of the release agreement from the tortfeasor reiterating the underinsured nature of the tortfeasor, and copies of drafts submitted from Allstate detailing the exact amount of coverage available to the tortfeasor," <u>Id.</u> at 5; and "Ms. Samberg offered sufficient proof of loss to Progressive on July 6, 2017," <u>Id.</u> at 7. Again, Samberg has failed to point to any evidence in the record supporting this argument.

In sum, Samberg has pointed to no evidence in the record in support of her argument that she provided Progressive with sufficient facts showing the tortfeasor was underinsured more than thirty days prior to Progressive's unconditional tender. Moreover, the Court has reviewed all documents filed in the record and has found no evidence supporting Samberg's assertion that she provided Progressive with documents establishing the underinsured nature of the tortfeasor at any time prior

to submission of the affidavit of no insurance on July 28, 2016. Although Samberg argues she provided Progressive with satisfactory proof of loss showing the tortfeasor was underinsured on or before July 6, 2017, the record contains no competent summary judgment proof supporting this assertion. Unsubstantiated assertions are insufficient to defeat summary judgment. Little v. Liquid Air Corp., 37 F.3d 1060, 1075 (5th Cir. 1994).[4] Accordingly, the Court finds Samberg has failed to carry her burden and show Progressive made its unconditional tender more than thirty days after receipt of sufficient information showing the tortfeasor was underinsured.

## B.    Whether Progressive's tender was "abusively low"

In her opposition brief, Samberg argues even if Progressive's tender was timely, her bad faith claim should not be dismissed because Progressive's tender "was abusively low." [Doc. No.   12 at 5-6]. According to Samberg:

> In the present case, the medical records and billing sent to Progressive on July 6, 2016 detailed that Ms. Samburg's undisputed special damages arising from the accident at the time were $68,843.00; this amount did not include any future medicals or general damages. The medical documents submitted detailed disc bulging on the cervical spine, months of physical therapy, and epidural steroid injections along with outpatient surgical produces in which she

_____

[4]Although there are additional ways to show underinsured status other than those set forth in LA. REV. STAT. 22:1295(6), in this matter, Samberg has offered no competent summary judgment proof of any kind and thus her claim fails. Compare Gillmer v. Parish Sterling Stuckey, 09-901 (La. App. 1 Cir. 12/23/09), 30 So.3d 782, 788 (plaintiff adequately proved underinsured status of the tortfeasor by submitting certified copies of the tortfeasor's insurance policy and declarations page, along with testimony showing his damages exceeded the policy's limits; thus, burden shifted to insurer to prove the existence of other applicable liability policies); Sherer v. Chaisson, 84-458 (La. App. 3 Cir. 1985), 469 So.2d 510, 514-15 (filing of the tortfeasor's insurance policy into evidence, together with proof that plaintiff's damages exceeded the limits of that policy, was sufficient for plaintiff to meet his burden of showing the tortfeasor was underinsured; thus, the burden shifted to the UM insurer to show there were other applicable insurance policies in existence at the time of the accident); with Lozano v. Brown, 10-489 (La. App. 5 Cir. 1/25/11), 60 So.3d 669, 672 (stipulation that plaintiff received $10,000 from the tortfeasor's insurer is insufficient to prove the tortfeasor was underinsured, as there was no evidence in the record that the $10,000 represented the policy limits).

underwent two separate medial branch blocks and bilateral radiofrequency ablations.

      Viewing the evidence most favorable to the plaintiff, the medical records, billing, and other documentation submitted to the defendant make it clear that Progressive's tender of $78,378.00 was abusively below an amount in which reasonable minds could differ. Thus, the tender, even if it had been made timely, did not satisfy the insurer's statutory obligation; and therefore, Ms. Samberg would still be eligible for damages. Further, the reasonableness of the tender is a genuine issue of material fact making summary judgment inappropriate to the case at hand.

[Doc. No.   12 at 6.

When satisfactory proof of loss has been made and the insured has made a showing that the insurer will be liable for some damages, the insurer must tender the reasonable amount that is due. McDill, 475 So.2d at 1091; Demma v. Automobile Club Inter-Insurance Exchange, 2008-2810 (La. 6/26/09), 15 So.3d 95, 103. "An insurer who does not tender unconditionally a reasonable payment, a figure over which reasonable minds could not differ, will be subject to penalties and attorney's fees." Guillory v. Lee, 2009-0075 (La. 6/26/09), 16 So.3d 1104, 1127. While an insurer need not tender payment for amounts that are reasonably in dispute, to avoid the imposition of penalties, it must unconditionally tender the undisputed portion of the claim. Louisiana Bag Co., Inc. V. Audubon Indem. Co., 2008-0453 (La. 12/2/08), 999 So.2d 1104, 1114-15. "The statute thus requires an insurer to pay only when it indisputably owes payment under the insurance contract and only the amount it indisputably owes." Demma at 103-04. The unconditional tender is not made "in settlement of the case, but to show [the insurer's] good faith in the matter and to comply with the duties imposed upon them under their contract of insurance with the insured." McDill, 475 So.2d at 1091-92.

Again, Samberg has failed to provide any evidence in support of her argument that

Progressive's tender of $78,378.00 was abusively low.[5] Samberg has submitted no certified medical records, no testimony as to the effect of her purported injuries, no evidence as to the anticipated costs, if any, of future medical treatment, nor any other evidence supporting her argument. Rather, Samberg merely cites the Court to two cases which she alleges involve similar injuries and the plaintiff was awarded an amount higher than that tendered by Progressive. [Doc. No.   12 at 6]. While two cases hardly provide a sufficient quantum study such that this Court would find in Samberg's favor, without supporting medical evidence it is impossible to even compare the facts of the cited cases to Samberg's injuries. Accordingly, the Court finds plaintiff has failed to demonstrate by competent summary judgment proof that there is an issue of material fact warranting trial with regard to the sufficiency of the amount tendered by Progressive. Lindsey, 16 F.3d at 618.

## CONCLUSION

For the reasons set forth above, Progressive's Motion for Leave to File Reply [Doc. No. 14] is GRANTED, and its reply memorandum is filed in the record of this matter.  Progressive's Motion for Partial Summary Judgment [Doc. No. 9] is also Samberg's claim for bad faith statutory penalties and attorney's fees, pursuant to LA. REV. STAT. 22:1892, is DISMISSED WITH PREJUDICE.

MONROE, LOUISIANA, this 25th day of January, 2018.

_[signature: Robert G. James]_

**ROBERT G. JAMES**
**UNITED STATES DISTRICT JUDGE**

---

[5]The total amount Samberg received from Allstate and Progressive was $93,378.00. Thus, after subtracting Samberg's past medical costs from that amount, she was left with an additional $24,535.00.